# EXHIBIT A

Case 2:25-cv-02890-TLP-atc     Document 1-1     Filed 09/19/25     Page 1 of 16
PageID 6

ELECTRONICALLY FILED
2025 Aug 21 3:09 PM
CLERK OF COURT - CIRCUIT

## IN THE CIRCUIT COURT OF SHELBY COUNTY
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

PAULINE GARTH,

    Plaintiff,

vs.

AT&T, Inc.

    Defendant.

Docket No. CT-4109-25

Div _____

## COMPLAINT FOR DAMAGES

Plaintiff Pauline Garth ("Plaintiff"), brings this Complaint against Defendant AT&T, Inc. ("AT&T" or "Defendant") as follows:

### INTRODUCTION

1. On or about July 12, 2024, Defendant AT&T admitted that information about more than 100 million of its customer's cellular telephone calls and texts were exposed in a massive data breach perpetrated by cybercriminals (the "Data Breach") on or about April of 2024.

2. More specifically, according to AT&T, the compromised data includes the telephone numbers of "nearly all" of its cellular customers and the customers of wireless providers that use its cellular customers and the customers of wireless providers that use its network between May 1, 2022 and October 31, 2022. The stolen logs contain a record of virtually every number AT&T customers called or texted – including customers of other wireless networks – the number of times they interacted and the call duration. Records of customers in January of 2023 may also be implicated, as well as AT&T landline customers who interacted with those cell numbers. The foregoing data is personally identifiable information ("PII") and is valuable and sensitive.

3. Plaintiff learned of the New 2024 AT&T Data Breach on May 29, 2024.

1

4.   Plaintiff had been, at the time she became aware of the data breach, a customer of AT&T for many years.

5.   At all times complained of, your Plaintiff's accounts with the Defendant were in good standing and in full force and affect.

## JURISDICTION, VENUE AND PARTIES

6.   At all times that are relevant, your Plaintiff was a resident citizen of Shelby County, Tennessee.

7.   Defendant is headquartered and has its principal place of business in Dallas, Texas and has at all times that are relevant hereto done business in Shelby County, Tennessee and has had sufficient minimum contacts with and intentionally avails itself of the markets in this State.

8.   Venue is proper in this, the Thirtieth Judicial District of the Tennessee Courts, pursuant to T.C.A. § 24-4-104 as the Defendant at all times that are relevant to this action maintained a business office in Shelby County, Tennessee.

## FACTUAL ALLEGATIONS

9.   Plaintiff had a contract with AT&T to provide services to her.

10.  Plaintiff did everything required of her under the contract.

11.  AT&T breached this contract by allowing the data breach.

12.  As a result of said breach, Plaintiff has suffered damage.

13.  On or about March 2024, Defendant AT&T admitted that it lost control over its current and former customers' highly sensitive personal information in a data breach perpetrated by cybercriminals (the "March 2024 Data Breach").

14.  The March 2024 Data Breach exposed the personal information of an estimated total of 73 million customers. Upon information and belief, this information includes full names, email addresses, mailing phone numbers, dates of birth, and Social Security numbers, as well as AT&T account numbers and AT&T encrypted passcodes that can be used to access AT&T customer account.

15.  AT&T has not been transparent about the nature and extent of data security lapses

impacting its customers. In addition to the massive March 2024 Data Breach, several years prior to that a cybercriminal indicated that he had taken millions of AT&T customers' data. AT&T did not sufficiently warn its customers that they were in danger of identity theft and worse until years later. For years, bad actors had access to information enabling them to impersonate, defraud, and spy on AT&T's unsuspecting customers.

16. Notwithstanding its history of massive data breaches, AT&T has not done enough to protect its affected customers, which are again Data Breach victims, even now.

17. AT&T failed to adequately safeguard Data Breach victims' PII allowing cybercriminals to access this wealth of priceless information *for years* before AT&T warned customers to be on the lookout.

18. AT&T had an obligation created by reasonable industry standards, common law, and representations to Data Breach victims to keep their PII confidential and to protect the information from unauthorized access.

19. Plaintiff provided her PII to AT&T with the reasonable expectations and mutual understanding that AT&T would comply with its obligations to keep such information confidential and secure from unauthorized access.

20. Because the Data Breach was an intentional hack by cybercriminals seeking information of value that they could exploit, Plaintiff is at imminent risk of severe identity theft and exploitation.

21. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from AT&T's failures to safeguard her PII being placed in the hands of unauthorized third parties, including strangers and possibly criminals.

22. Plaintiff has had her assets stolen from her bank when on or about May 29, 2024 Plaintiff discovered that $90,000.00 had been improperly removed from her account at Regions Bank.

23. Plaintiff alleges that the information acquired by wrongdoers from the above-

3

described events allowed the thefts to happen.

24. But for Defendant's improper acts and omissions, Plaintiff's accounts would not have been subject to improper access by the wrongdoers described herein.

25. AT&T owed a duty to Plaintiff whose PII was entrusted to AT&T to disclose in a timely and accurate manner when data breaches occurred.

26. AT&T owed a duty of care to Plaintiff because they were foreseeable and probable victims of any inadequate data security practices.

27. AT&T knew or should have known that AT&T's computer and/or electronic systems were targets for theft and other cybersecurity attacks because the warning signs were readily available and known in Defendant's industry.

28. Plaintiff has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in AT&T's possession, is protected and safeguarded from future breaches and leaks.

29. Plaintiff was required to provide and did provide her PII in connection with obtaining services provided by AT&T. Plaintiff has been an AT&T cellular customer for numerous years.

30. Plaintiff typically takes measures to protect her PII and is very careful about sharing her PII.

31. Plaintiff stores any documents containing her PII in a safe and secure location. She diligently chooses unique usernames and passwords for her telecommunications accounts.

32. Plaintiff and Data Breach Victims have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

   i. Trespass, damage to and theft of their personal property, including their PII;
   ii. Improper disclosure of their PII;
   iii. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and having been already misused;
   iv. Damages flowing from AT&T's untimely and inadequate notification of the data breach;

v. Loss of privacy of suffered as a result of the Data Breach;
vi. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach; and
vii. Breach of Contract.

## FACTUAL ALLEGATIONS
### AT&T'S Announcement

33. Plaintiff repeats, re-alleges and incorporates by reference herein all of the allegations contained in the foregoing paragraphs.

34. On July 12, 2024, AT&T announced that "customer data was illegally downloaded from [it's] workspace on a third-party cloud platform. We launched an investigation and engaged cybersecurity experts to understand the nature and scope of the criminal activity. We have taken steps to close off the illegal access point."

35. On the same day, AT&T posted a notice of "Unlawful Access of Customer Data" notice at https://www.att.com/support/article/my-account/000102979?_source=EPcc000000000000U (last accessed July 12, 2024). AT&T provides several suggestions to affected customers as to how to protect themselves from "phishing, smishing, and other online fraud."

36. AT&T also apologized to is customers for the July 2024 Data Breach and admitted that it has an obligation to protecting the information in its care. *Id.*

37. This is the second massive data breach that AT&T has announced in 2024. In or about March 2024, Defendant AT&T admitted that it lost control over its current and former customers' highly sensitive personal information in a data breach perpetrated by cybercriminals (the "March 2024 Data Breach").

38. The March 2024 Data Breach exposed the personal information of an estimated total of 73 million customers. Upon information and belief, this information includes full names, email addresses, mailing phone numbers, dates of birth, and Social Security numbers, as well as

5

AT&T account numbers and AT&T encrypted passcodes that can be used to access AT&T customer accounts.

## AT&T's Lack of Transparency About its Security Failures

39. Plaintiff repeats, re-alleges and incorporates by reference herein all of the allegations contained in the foregoing paragraphs.

40. AT&T has not been transparent about the nature and extent of data security lapses impacting its customers. In addition to the massive March 2024 Data Breach, several years prior to that a cybercriminal indicated that he had taken millions of AT&T customers' data. AT&T did not sufficiently warn its customers that they were in danger of identity theft and worse until years later. For years, bad actors had access to information enabling them to impersonate, defraud, and spy on AT&T's unsuspecting customers.

41. Notwithstanding its history of massive data breaches, AT&T has not done enough to protect its affected customers, which are again Data Breach victims, even now.

42. AT&T failed to adequately safeguard Data Breach victims' PII allowing cybercriminals to access this wealth of priceless information *for years* before AT&T warned Class Members to be on the lookout.

43. AT&T had an obligation created by reasonable industry standards, common law, and representations to Data Breach victims to keep their PII confidential and to protect the information from unauthorized access.

44. Plaintiff and other Data Breach victims provided their PII to AT&T with the reasonable expectations and mutual understanding that AT&T would comply with its obligations to keep such information confidential and secure from unauthorized access.

45. Because the Data Breach was an intentional hack by cybercriminals seeking

6

information of value that they could exploit, victims are at imminent risk of severe identity theft and exploitation.

46. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from AT&T's failures to safeguard her PII being placed in the hands of unauthorized third parties, including strangers and possibly criminals.

47. Plaintiff has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in AT&T's possession, is protected and safeguarded from future breaches and leaks.

48. AT&T owed a duty to Plaintiff and the Data Breach victims whose PII was entrusted to AT&T to disclose in a timely and accurate manner when data breaches occurred.

49. AT&T owed a duty of care to Plaintiff and the Data Breach victims because they were foreseeable and probable victims of any inadequate data security practices.

50. AT&T knew or should have known that AT&T's computer and/or electronic systems were targets for theft and other cybersecurity attacks because the warning signs were readily available and accessible via the Internet.

51. This Data Breach has and will lead to further devasting financial and personal losses to Data Breach victims. As a direct and proximate result of the Data Breach, Plaintiff and the Data Breach victims have been placed at an imminent, immediate, and continuing increased risk of harm from fraud, blackmail, and identity theft. Plaintiff and the Data Breach victims will now have to spend time and money to mitigate the actual and potential impact of the Data Breach on their everyday lives, including but not limited to placing "freezes" with the credit reporting agencies, contacting their financial institutions, closing or modifying financial

accounts, and reviewing and addressing unauthorized activity for years to come.

52. Plaintiff and Data Breach Victims have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

i. Trespass, damage to and theft of their personal property, including their PII;
ii. Improper disclosure of their PII;
iii. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and having been already misused;
iv. Damages flowing from AT&T's untimely and inadequate notification of the data breach;
v. Loss of privacy of suffered as a result of the Data Breach; and
vi. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach.

## COUNT I
## Negligence

53. Plaintiff repeats, re-alleges and incorporates by reference herein all of the allegations contained in the foregoing paragraphs.

54. AT&T offered and provided Plaintiff services that inevitably involved their submission of sensitive personal information, including the phone numbers they called and texted, which is their sensitive and non-public PII. AT&T collected, stored, used, and benefited from this non-public PII of Plaintiff the provision of providing telecommunications services to Plaintiff.

55. Plaintiff entrusted AT&T with her PII and AT&T was fully cognizant of the value and importance of the PII and the types of harm that Plaintiff could and would suffer if the PII were wrongfully disclosed.

56. AT&T negligently created a dangerous situation by failing to take adequate and reasonable steps to safeguard Plaintiff's sensitive PII from unauthorized release or theft.

57. AT&T owed an independent duty to Plaintiff to exercise reasonable care in

8

obtaining, securing, deleting, protecting, and safeguarding the sensitive PII, and preventing the PII from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

58. AT&T was required to prevent foreseeable harm to Plaintiff. Accordingly, AT&T had a duty to take adequate and reasonable steps to safeguard their sensitive PII from unauthorized release or theft. AT&T's duties, included, but were not limited to: (1) designing, maintaining, and testing its data security systems, data storage architecture, and data security protocols to ensure Plaintiff's PII in its possession was adequately secured and protected; (2) implementing processes that would detect an unauthorized breach of its security systems and data storage architecture in a timely and adequate manner; (3) timely acting on all warnings and alerts, including public information, regarding its security vulnerabilities and potential compromise of the PII of Plaintiff; and (4) maintaining data security measurers consistent with industry standards and applicable federal and state laws and other requirements.

59. AT&T owed a common law duty to prevent foreseeable harm to Plaintiff. The duty existed because Plaintiff were the foreseeable and probable victims of any inadequate security practices of AT&T in its collection, storage, and use of PII from Plaintiff. It was foreseeable that Plaintiff would be harmed by the failure to protect their PII because malicious actors routinely attempt to steal such information for use in nefarious purposes, such as blackmail, fraud, identity theft, and other forms of impersonation.

60. AT&T's obligation to use adequate and reasonable security measures also arose because AT&T collected, stored, and used the PII of Plaintiff for the procurement and provision of telecommunications services.

61. Additionally, the policy of preventing future harm weighs in favor of finding a AT&T had a duty towards Plaintiff.

9

62. AT&T also owed a duty to timely disclose the material fact that its computer systems and data security practices and protocols were inadequate to safeguard users' personal calling and text-messaging data from theft and other misuses, including without limitation blackmail, fraud, identity theft, and other forms of impersonation.

63. The injuries suffered by Plaintiff were proximately and directly caused by AT&T's failure to follow reasonable, industry standard security measures to protect Plaintiff's PII.

64. When individuals have their personal information stolen, they are at substantial risk for imminent identity theft, and need to take additional steps to protect themselves following this unprecedented Data Breach.

65. If AT&T had implemented the requisite, industry-standard security measures and exercised adequate and reasonable care, data thieves would not have been able to take the PII of Plaintiff.

66. AT&T breached these duties through the conduct alleged here in this Complaint by, including without limitation, failing to protect the PII in its possession; failing to maintain adequate computer systems and allowing unauthorized access to and exfiltration of Plaintiff's PII; failing to disclose the material fact that AT&T's computer systems and data security practices were inadequate to safeguard the PII in its possession from theft; and failing to disclose in a timely and accurate manner to Plaintiff the material facts of the Data Breach.

67. But for AT&T's wrongful and negligent breach of its duties owed to Plaintiff, their PII would not have been compromised. And, as a direct and proximate result of AT&T's failure to exercise adequate and reasonable care and use commercially adequate and reasonable security measures, the PII of Plaintiff was accessed by ill-intentioned individuals who could and will use the information to commit identity or financial fraud. Plaintiff faces the imminent, certainly

impending, and substantially heightened risk of identity theft, fraud, and further misuse of her personal data.

68. There is a temporal and close causal connection between AT&T's failure to implement security measures to protect the PII collected from Class Members and the harm suffered, or risk of imminent harm suffered, by Plaintiff.

69. It was foreseeable that AT&T's failure to exercise reasonable care to safeguard the PII in its possession or control would lead to one or more types of injury to Plaintiff. The Data Breach was also foreseeable given the known, high frequency of cyberattacks and data breaches in the telecommunications industry.

70. Plaintiff was the foreseeable and probable victim of any inadequate security practices and procedures. AT&T knew of or should have known of the inherent risks in collecting and storing PII, the critical importance of providing adequate security of PII, the current cyber scams being perpetrated on PII, and that it had inadequate protocols, including security protocols in place to secure the PII of Plaintiff.

71. AT&T's own conduct created the foreseeable risk of harm to Plaintiff. AT&T's misconduct included its failure to take the steps and opportunities to prevent the Data Breach and its failure to comply with industry standards for the safekeeping, encryption, and authorized disclosure of the PII of Plaintiff.

72. Plaintiff had no ability to protect her PII that was and is in AT&T's possession. AT&T alone was, and is, in a position to protect against the harm suffered by Plaintiff as a result of the Data Breach.

73. As a direct and proximate result of AT&T's negligence as alleged above, Plaintiff has suffered, will suffer, or is at increased risk of suffering:

a. The compromise, publication, theft and/or unauthorized use of their PII;

b. Unauthorized use and misuse of their PII;

c. The loss of the opportunity to control how their PII are used;

d. Out-of-pocket costs associated with the prevention, detection, recovery and remediation from blackmail, fraud, identity theft, and other forms of impersonation;

e. Lost opportunity costs and lost wages and time associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from blackmail, fraud, identity theft, and other forms of impersonation;

f. The imminent and certain impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g. The continued risk to their PII that is subject to further breaches so long as AT&T fails to undertake appropriate measures to protect the PII in AT&T's possession; and

h. Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate, and repair the impact of the Data Breach for the remainder of the lives of Plaintiff.

## COUNT II
## Tennessee Consumer Protection Act of 1977

74. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

75.     The harm that occurred as a result of the Data Breach is the type of harm the § 47-18-101 et seq., **Tennessee Consumer Protection Act** seeks to prevent.

76.     As a direct and proximate result of AT&T's violations of the above-mentioned Tennessee statutes. Plaintiff has suffered, and continue to suffer, damages arising from the Data Breach as described herein and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## COUNT III
## Unjust Enrichment

77.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

78.     Plaintiff conferred a monetary benefit on AT&T in the form of monies or fees paid for services from AT&T. AT&T had knowledge of this benefit when it accepted the money from Plaintiff.

79.     The monies or fees paid by the Plaintiff were supposed to be used by AT&T, in part, to pay for the administrative and other costs of providing reasonable data security and protection to Plaintiff.

80.     AT&T failed to provide adequate security, safeguards, and protections to the personal data of Plaintiff, and as a result the Plaintiff overpaid AT&T as part of services they purchased.

81.     AT&T failed to disclose to Plaintiff and members of the class that its computer systems and security practices were inadequate to safeguard users' and former users' personal data against theft.

82.     Under principles of equity and good conscience, AT&T should not be permitted to retain the money belonging to Plaintiff because AT&T failed to provide adequate safeguards

13

and security measures to protect Plaintiff's PII that they paid for but did not receive.

83. AT&T wrongfully accepted and retained these benefits to the detriment of Plaintiff.

84. AT&T's enrichment at the expense of Plaintiff is and was unjust.

85. As a result of AT&T's wrongful conduct, as alleged above, Plaintiff and the class are entitled under the unjust enrichment laws of Tennessee to restitution and disgorgement of all profits, benefits, and other compensation obtained by AT&T, plus attorneys' fees, costs, and interest thereon.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff requests the following relief:

a. A mandatory injunction directing AT&T to adequately safeguard Plaintiff and the PII by implementing improved security procedures and measures as outlined above;

b. An award of other declaratory, injunctive, and equitable relief as is necessary to protect the interests of Plaintiff;

c. An award of restitution and compensatory, consequential, and general damages to Plaintiff, including nominal damages as allowed by law in an amount to be determined at trial or by this Court but not less than $270,000.00;

d. An award of actual or statutory damages to Plaintiff in an amount to be determined at trial or by this Court but not less than $270,000.00;

e. An award of reasonable litigation expenses and costs and attorneys' fees to the extent allowed by law;

f. An award to Plaintiff of pre and post-judgment interest, to the extent allowable; and

g. Award of such other and further and general relief as equity and justice may require.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of any and all issues in this action.

Respectfully Submitted,

_____
Marti L. Kaufman (11555)
**KAUFMAN MONROE LAW, LLC**
5050 Poplar Avenue, Suite 2418
Memphis, TN 38157
T: (901) 202-4747
F: (901) 432-5519
marti@kaufmanmonroelaw.com
*Attorney for Plaintiffs*